At this time we'll hear Orlando v. Nassau County District Attorney's Office. Thank you. Good morning. Good morning, Your Honors. Jane Simpkins-Smith for Appellant Mark Orlando. In this case, Mr. Orlando's trial was severed from his co-defendant because the court had ruled that the co-defendant's confession in which he implicated Mr. Orlando was admissible at trial. And to protect from the prejudice of that and the confrontation clause problems, the judge severed the cases. However, he then let in through the back door, we say, what he had excluded from the front door because he allowed the investigating and interrogating officer to paraphrase the co-defendant's confession. Could I ask you about the Bruton decision to have separate trials? It's hard to figure it out from the history of the case, but was it . . . can you represent that both . . . they were severed for a double Bruton problem, which is that there were confessions by both of the defendants, so both of the defendants would not testify in the other defendant's case, so that's the confrontation clause problem. Well, I think there were confession . . . I would say that Mr. Orlando did not confess. He had exculpatory . . . But there were . . . He gave exculpatory statements that implicated the co-defendant. That's what I mean. So . . . So it was both . . . Correct. Both would have suffered from a joint trial. That's my question. Correct. The State Appellate Court upheld the introduction of the evidence regarding the co-defendant's confession on the ground that it explained the detective's actions in the course of the interrogation and it explained their effect on the defendant. Well, it certainly explained why your client went from a position . . . went from offering an alibi to offering a defense that he was a mere spectator. It explained that, but it didn't explain at all whether the defendant's statement was true or false. This is . . . Why is that? I mean, you make the point in your brief that the only way the statement's relevant is if it's considered to be true, right? Don't you make that argument in your brief? If you don't know if it's true or false, it has no relevance. Why is that, though? Assume it was untrue. Suppose that Jeannot's statement that Orlando paid him to commit the murder was a lie and that actually, let's say, Jeannot and Orlando both participated in the murder in some other way, one that left Jeannot a little bit more culpable. Under those circumstances, it seems to me, admitting Jeannot's statement as part of what the officer told Orlando before Orlando changed his story would still be relevant because what makes Orlando's statement more likely to be a lie is the fact that it was given after he was told that Jeannot was implicating him. So in that hypothetical, the inference does not depend on the truth of what Jeannot said. Even if you, I'm not conceding that that shows that it was a lie, but even if you were to conclude that it showed that, that does not prove his guilt or innocence. It proves that he gave a false statement, which may show that he had a consciousness of guilt, which may be some weak evidence of something, but it's not proof that he paid. I think the two critical things that the prosecutor said that he did that proved his guilt was that he paid the co-defendant. That doesn't show that he paid the co-defendant and it doesn't show that he lifted the sweatshirt up at the time when there was absolutely no forensic evidence for that, right? I know that you don't think it's strong. You think it's ambiguous, but that's a jury question, right? I think that there is a, the critical question that I think, and I want to go back to Tennessee v. Street and just go back one more step and talk about Crawford, has in a footnote that the confrontation clause does not bar the use of testimonial statements for purposes other than establishing the truth. The prosecutor here says, anytime there's a non-hearsay purpose, Tennessee v. Street stands for the proposition that the testimony is admissible. And Street, I would argue, doesn't do that. Street says, we still have to consider Bruton. That is an essential ingredient to our analysis. Bruton requires us to ask, is there a significant risk that the jury is going to consider this testimony for its truth? And in this case, I submit to you, there is a very strong chance that they're going to consider it for its truth. Because it was the, that was the, the truth was what, they were arguing that that was the truth. That what he said was true. That was their case, that he paid him the money based on his $100 bills found in their respective homes. So there was a significant risk that they were going to be able, they could not follow the jury instruction, which said, like Bruton, don't consider it for your, for its truth. Don't, in Bruton, they said don't even consider it at all. This case was kind of confusing to the jury what they could consider it for. But I think the, it is essential that Bruton is not a dead letter. Tennessee v. Street does not make Bruton a dead letter. You still have to ask, is there a significant chance that the jury is going to misuse this evidence and use it for a truth when the defendant did not have an opportunity to cross-examine it? And if I could just finish the thought that this court's analysis in U.S. v. Race, it's really quite similar, although it preceded Crawford. But its analysis here was quite similar to what was done in Street. It's like a probative prejudice analysis that has to be, that's how you protect the confrontation clause. It has to be critical to the government's case, not just some relevance. It has to be critical. The defendant has to invite it somehow. There are no alternatives to it. And is there a chance of misuse by the jury? And in this case, just as in Bruton, there was such a chance. We'll hear you on rebuttal. Thank you. Good morning. May it please the Court, my name is Sarah Rabinowitz, and I represent Defendant Apelli, the Nassau County District Attorney's Office. Your Honors, Petitioner essentially disagrees with the Appellate Division's application of Supreme Court cases such as Bruton, Crawford, and in particular, Tennessee v. Street. But disagreement, simple disagreement, is not the standard here. As the Court is aware, this is a very deferential standard. Is there an unreasonable application of Bruton in this case? No, it's not, Your Honor. Petitioner... ...paid for hire, that's what the prosecutor argued in his summation, that this is a murder-for-hire case. He paid him to kill the victim. Your Honor, Petitioner was protected under Bruton when the severance happened because Bruton was a case where the Supreme Court considered... No, the statement came in anyway. How did the Bruton severance help him? The co-defendant's confession comes in. That's why you have Bruton. Your Honor, the statement did not come in. All that came in... This case is different. McGinn's restatement of it came in. Your Honor, it wasn't a case like Street or even like U.S. v. Reyes where the witness got on the stand and said, this is the conversation I had, this is the statement, this is the accomplice's statement. All Detective McGinn testified to was that he walked into that room and told Petitioner, he testified, this is what I told Petitioner. Now, that... He said that the co-defendant said that he was the murderer, but that Marco Orlando had paid him to do it. And, Your Honor, there was, unlike in Bruton, where the accomplice's statement was offered, was indisputably offered for the truth of the matter asserted. Here, it was not. It was... In Bruton, there was a cautionary instruction as well. In Bruton, they said, don't consider it for the truth of the matter asserted. And the Supreme Court in Bruton said, that's not good enough. But, Your Honor, the reason the Confrontation Clause was implicated in Bruton is because the evidence was offered for the truth of the matter asserted in some manner at that trial for the other defendant. Here, it was not offered for the truth of the matter asserted in any manner. What was the other evidence of payment? That it was a murder for hire? Your Honor, there was only circumstantial evidence of payment. Well, whatever it was, what was it? It was... Because if the only evidence, if the only thing the jury had to go on, is what Officer McGinn testified about what the co-defendant said, you're in trouble. Your Honor, that was not all that... What was there? Well, first of all, I would like to make clear, the people did not have to prove that this was a murder for hire. That wasn't an element. It was argued. It was argued, Your Honor, and the prosecutor was permitted to argue that because... If there was no other evidence of it, then obviously the statement by McGinn was being used or promoted to the jury for the truth of what it said. Your Honor, there was circumstantial evidence of the payment. Yes, like what? There were identical new $100 bills in shoeboxes found in each defendant's house. But that... When you say new, you... They were piles of crisp $100 bills with the... Those people were gamblers. I mean, they're not going to have quarters. Your Honor, but beyond that, that was... You said piles, right? You just said piles because it was $17,000 he owed them, right? You said piles... $17,000 he owed, Your Honor, yes. There were 10 $100 bills in Orlando's home, and there were four in Juneau's home. And there's no DNA evidence, there's no testimony that those were $100 bills that the victim had with them or that had been somehow otherwise linked to this. That's the first answer to Judge Jacob's question, right? Okay, so you got four $100 bills, you got 10 $100 bills, so what? Your Honor, that was the circumstantial evidence of payment. But what the people had to prove here was that Petitioner aided and abetted in this murder. And there was overwhelming evidence of that. First of all, motive. Petitioner was the one who had something to gain by Mr. Calabrese being out of the picture. Was that the theory that was argued to the jury? I mean, if the only theory argued to the jury was that he was hired and the only evidence is four $100 bills in one place and 10 in another, then it does start to sound like this statement mattered a lot. Your Honor, that was one theory argued to the jury, but the evidence of the fact that this was a two-man job, that this murder was planned, was overwhelming. And that's what the people had to prove. You were talking about the motive. What is it Orlando had to gain? He was very heavily in debt, Your Honor. He owed the deceased $17,000. Yes, Your Honor. Now, if he expected that man to die, why did he bring the $17,000 with him? You could just kill him, and then you don't have to pay him. Well, Your Honor, I mean, it's not definite that he brought the $17,000 with him, but the $17,000— Well, the $17,000 was never found. But the evidence of the fact that the petitioner aided and abetted in this murder was not only his motive. There was also forensic evidence, the fact that he lied in his second statement and said that Jeannot shot Bobby Calabrese from behind him. And the autopsy established, indisputably, that Bobby Calabrese was shot from behind, and he was facing petitioner when it occurred. What is the aiding and abetting theory? Is the aiding and abetting theory simply that Jeannot shot him, and then he drove him away, helped him dispose of the weapon, drove Jeannot home? That's the aiding and abetting theory? No. The aiding and abetting theory, Your Honor, is that this was a carefully planned execution, and that—for example, co-workers testified that the week leading up to the murder, that very uncharacteristic for Mr. Jeannot and petitioner, that they were off by themselves. They weren't eating with everybody else. They were off by themselves talking about something. Just the fact that Jeannot accompanied petitioner that night was very suspicious because that was not the practice. The practice was that petitioner was the man who would meet with Mr. Calabrese very often in a public place in broad daylight, in the parking lot in front of where petitioner worked. On this particular night— But if you give somebody $17,000 in gambling losses, you may not want to do it in an open café. Well, on this particular night, surveillance footage had petitioner driving up and down a darkened street with something obstructing his license plate. The prosecutor argued it was—it could have been a piece of tape. And cell phone records established that shortly thereafter that footage was taken, petitioner called Mr. Calabrese presumably to tell him, Oh, we're not going to meet at the spot we planned. We're going to meet on this dark, deserted street. There was— Can I ask you about another piece of compelling evidence that the district court cited? And that's the testimony of Barbara Diamond, who testified that the morning after the homicide, the defendant called her—she called the defendant and that he told her that the victim had been shot three times in the head. And the district court says that's more compelling evidence of the defendant's guilt here. But that's still consistent with his confession, which is I was going to deliver the $17,000. When I got there, you know, jumps out of the car, unbeknownst to me, as a surprise to me, goes, shoots him three times in the head. That's his story, whether it's true or not. How is the Diamond testimony inconsistent with his story, the defendant's story? Your Honor, I wouldn't say that it's inconsistent with petitioner's story. But what I would say is it fits into this pattern of very erratic behavior after the murder that demonstrates that this was not— this was not the normal reaction of an innocent bystander. This man is claiming that—and this is why the second statement was such vital evidence to both the prosecution and the defense. This man is claiming that he was an innocent bystander, that he knew nothing about this, that the only reason he didn't go to the police was because Jeannot had threatened his life and threatened the lives of his family. But that's not so. The fact is he helped to dispose of the weapon. He drove him there. He drove him away. I mean, he had many reasons not to go to the police. And he never claimed—and he did not, at least at the end, claim to be an innocent bystander. He was a—he was at least an accessory after the fact. Well, Your Honor, he claimed that he knew nothing about this murder, that he did not plan this murder, and his actions did not speak to that. Continuing with your question, Your Honor, just the fact that he called people on the phone and calmly discussed this murder, even though he was claiming that Jeannot did the whole thing and he was just in fear of Jeannot. He went to his friend's house at 9.30 at night that night to look at the deck. He's saying that Jeannot would let him go into his friend's house by himself and look at a deck at 9.30 at night. And this is the actions of a man who just witnessed somebody commit a murder, and he had no idea it was going to happen. But, Your Honor, the second statement, the reason it was—this was basically Petitioner's defense without him ever having to take the stand. And that's why it was very important to Petitioner's case that he had to have the jury believe that this is the truth, this is what really happened. It was equally important for the prosecution to overcome that defense, to be able to show the jury step by step how this statement came about. What was the Petitioner's state of mind when he made this? Was he really just in fear of Jeannot? Was he really just a good guy that suddenly had a change of heart and was telling the police what really happened? It would have severely undermined the accuracy of the inferences the jury could draw from this evidence if they had not been given the whole picture. Okay. Thank you. Will, your rebuttal. Thank you, Your Honor. Ms. Smith, what's your response to the last argument? In other words, it's essentially the rebuttal argument. Now, I recognize he didn't take the stand. I know I saw in your brief that you said it was only done after the ruling was made. But the reality is it's right in the statement, right? Doesn't he say in the statement the reason I didn't say this before is that I was afraid? And so it was an avenue for the defense lawyer to drive a bus down unless the statement could be explained, no? I don't think there was any obligation on the part of the state to use the defendant's statement in their case in chief. They wanted to use it because they had no real evidence in this case. So they relied on, like, everything that he said as true except the parts that were exculpatory. And if in this case all the circumstances that they say are so strong in their case, then why did they need an explanation from the detective about the statement? It just didn't explain what parts were true and what parts were false. It didn't explain the fact that the defective said this. If the two statements were quite different in material respects, why wouldn't the statement about your client financing this be useful to show that the second statement was voluntary, that once he heard that he's being blamed for it, that he's supposed to have financed it, he came forward and said, all right, here, have a new story. He didn't challenge that his statement was involuntary, except to the extent that he said that he needed additional Miranda warnings. It's always an issue. He didn't use that anyway, right? Yeah. Actually, I confess that I don't have very much experience in state court. My experience is in federal court. However, I did look at the state court rules about the obligation to prove voluntariness, and if you just give me one moment. In any case, I can tell you that the rule says that essentially there are certain ways that the defendant can challenge the voluntariness of his statement. He must do it in a motion to suppress. Even if he doesn't do it in a motion to suppress, or if he does and it's ruled adversely to him, he can make it an issue for the jury, in which case the prosecutor needs to prove the voluntariness. Wasn't it part of the charge in this case? The part of the charge was that they could use the statement if it was voluntary and true. The charge to— It was voluntariness beyond a reasonable doubt. Wasn't that part of the charge? I don't think they said voluntariness beyond a reasonable doubt. They said they had to prove that it was voluntary and true. This, they're claiming, was false. They were claiming the statement was false. That was the significance of it, not that it was true. False in part, true in part. But the charge was confusing because it didn't tell the jury what use it could make of those portions which it found were false. The charge only said what you could do if the parts that you found were true. Your answer to the rebuttal argument is that this is a problem the state created for itself. They didn't have to use the statement at all. That's the answer? I mean, the statement puts him at the scene of the crime. The statement arguably supports aiding and abetting by itself, right? I mean, he helps dispose of the weapon. Unless you would have argued duress, the state really is not going to use that statement? I'm not saying that if I were the prosecutor, I wouldn't have used the statement. I'm not saying that. I'm saying that in Tennessee v. Street, which is the case that spawned this litigation, it was completely different. The defendant testified. They were relying on the defendant's confession fully for its truth. And he was saying that confession was not true at all. And it was critical. And it was a challenge to the conduct of law enforcement before the trial. There was no such challenge to the conduct of law enforcement by this defendant. Thank you both. We will reserve decision.